IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP J. PAPA | : | CIVIL ACTION |
| | : | |
| | : | NO. 12-03241 |
| v. | : | |
| | : | |
| CHESTER COUNTY PRISON, | : | |
| WARDEN MCFADDEN, | : | |
| DIRECTOR JACK HEALY and | : | |
| JACK CRANS | : | |
| | : | |
| | : | |
| O'NEILL, J. | | SEPTEMBER 26, 2012 |

### MEMORANDUM

Presently before me is *pro se*[1] plaintiff Phillip Papa's Motion to Request Transfer to a State Facility and defendants' Answer thereto. For the following reasons the motion is denied.

### BACKGROUND

Papa is currently incarcerated at SCI-Chester. He filed a complaint alleging that the prison provides no Jewish religious services or kosher meals and that this denies him his constitutionally protected ability to practice his religious beliefs. See Dkt. No. 5, ECF p. 3-5. His complaint requests placement in a state correctional institute that provides weekly Jewish religious services as well as kosher meals and compensatory damages. Id. at 5. Defendants filed an answer in which they assert that Papa is being provided with kosher meals, that he has been permitted to see a rabbi and that his worship requests are being met (e.g. defendants assert that Papa has been provided with a Tanakh, as he had previously requested). See Dkt. No. 10, ECF

---

[1] *Pro se* pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). *Pro se* complaints, especially from civil rights plaintiffs, should be read liberally, as prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims. Alston v. Parker, 363 F.3d 229, 233–34 & n.6 (3d Cir. 2004).

p. 2.  Additionally, defendants question the sincerity of Papa's religious beliefs and allege that his suit (and the instant motion) is merely a means by which to achieve a transfer to a different state prison.  See Docket # 13, ECF p. 1.

In the present motion, Papa contends that the conditions at SCI-Chester deprive him of meaningful access to the courts.  He asserts, *inter alia*, that he is only allowed access to the law library for two hours a week, that he has no access to any person(s) trained in the law or a law librarian and that he has no access to a copy machine or carbon paper.  See Dkt. No. 12, ECF p. 2-3.  Further, Papa alleges that that his "legal mail" has not been delivered in a reasonable amount of time (and at times has been delayed up to 12 days), which has rendered him unable to "obtain legal information from outside parties."  Id. at p. 4.

Defendants oppose the motion, asserting that requests for library access can be made through the "inmate's counselor and/or the Director of Inmate Services," and such requests from "any inmate with an approved *pro se* motion from any court will be honored" by prison staff.  See Docket # 13, ECF p. 2.  Defendants also argue that "limited access to the law library is insufficient to grant relief by way of a transfer . . . for denial of access to the courts because . . . [Papa] has failed to plead any actual injury to his efforts to pursue a legal claim."  Id., citing Lewis v. Casey, 518 U.S. 343, 351 (1996).  For the reasons set forth below, I agree with defendants that Papa has not alleged any actual injury which would constitute a denial of access to the courts, and so deny the motion.

## DISCUSSION

It is well-established that inmates have a fundamental constitutional right of access to the courts.  Lewis, 518 U.S. at 346.  However, the right is limited to direct criminal appeals, habeas petitions and civil rights actions.  Id. at 354.  Within those areas, the right of access to the courts

"requires access to adequate law libraries or adequate assistance from persons trained in the law for filing challenges to criminal sentences, both direct and collateral, and civil rights actions." Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). But an inmate has no independent right to such facilities or programs. Lewis, 518 U.S. at 351. Rather, the right of access to the courts merely ensures that inmates possess "the capability of bringing contemplated challenges to sentences or conditions of confinement before courts." Id. at 356.[2] In Christopher v. Harbury, the Supreme Court held that to pursue a claim for an access to the courts violation an inmate must establish that the denial of access caused was an actual injury to a nonfrivolous or arguable claim. 563 U.S. 403, 415 (2002). An actual injury must be pled regardless of whether the inmate is alleging a denial of access to the courts for an anticipated future claim or one that was lost or impeded because access was denied. Id. at 414-15.[3] Because the right of access to the

---

[2] The right of access to the Court

> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis, 518 U.S. at 355.

[3] Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher, 536 U.S. at 412-15. As part of the requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. The plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Christopher, 536 U.S. at 415. The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417–18.

courts is ancillary to Papa's underlying claim, in order to establish an entitlement to any relief, he must first demonstrate that the denial of his access to the law library resulted, or will result, in some harm to his pursuit of the current litigation. Id. at 415.

Nothing in the record suggests that Papa's pursuit of his claims has suffered from the prison regulations that govern his access to the prison law library. Indeed, the docket reveals that Papa has responded to court orders and successfully applied for *in forma pauperis* status after initially failing to do so. See Dkt. Nos. 2-4. See Ingram v. SCI Camp Hill, No. 08-0023, 2010 WL 4973302, at *16 (M.D. Pa. Dec. 1, 2010) (dismissal of plaintiff's action without prejudice for failure to comply with in forma pauperis requirements did not constitute loss of claim sufficient to state injury under denial of access to the courts); aff'd sub nom. Ingram v. S.C.I. Camp Hill, 448 F. App'x 275, 280 (3d Cir. 2011). Papa does not identify any claim that he anticipates filing that has been compromised by any limitations imposed upon his access to the law library, nor does he identify any specific ways that his ability to pursue his current claim has been hindered. While Papa asserts that he is only allowed two hours a week at the library due to prison regulations, he has not shown how this has harmed his pursuit of his claims in this case. See e.g., Gay v. Shannon, 211 F. App'x 113, 115 (3d Cir. 2006) (affirming dismissal of First Amendment right of access claim because prisoner did not allege that he was actually injured by having limited access to his legal materials). Moreover, Papa has been placed in Protective Custody at his own request, which subjects his library access to a more curtailed schedule. See Docket # 13, ECF p. 2.

I am reluctant to disturb the internal deliberations of prison officials regarding Papa's housing status or location of detention, and at this stage, such a review is unnecessary.[4] The

---

[4] "[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order

4

Constitution only requires that prisoners be able to present their grievances to the courts, and Papa has thus far done so.  <u>Lewis</u>, 518 U.S. at 360.  Because Papa can point to no concrete harm that his claim has suffered due to deficiencies of the law library at SCI-Chester, I will deny his motion for transfer.

      An appropriate Order follows.

---

and discipline and to maintain institutional security." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d Cir. 2002), <u>quoting</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).  When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.  <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  To ensure that courts afford appropriate deference to prison officials, the Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987).  Even where claims are made under the First Amendment, a court must not substitute its judgment on difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison.  <u>Id.</u> at 353.  Courts are ill-equipped to deal with problems of prison administration and where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.  <u>Lewis</u>, 518 U.S. at 387.